IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALLISON M. OVERCASH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 21-cv-1140-MPT |
| ) | |
| KILOLO KIJAKAZI, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**<u>MEMORANDUM</u>**[1]

Presently before the court are plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[2] Plaintiff requests judgment under sentence four of 42 U.S.C. § 405(g), reversing the Commissioner's final decision and remanding for further administrative proceedings.[3] For the following reasons, plaintiff's motion for summary judgment is denied, and defendant's motion for summary judgment is granted.

**I.   BACKGROUND**

This action arises from the denial of Allison M. Overcash's ("plaintiff") claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act").[4] Plaintiff protectively filed her benefits application for DIB on February 27, 2015.[5] She

---

[1] Following the parties' consent to proceed before a United States Magistrate Judge to be selected by the court, the case was referred to this judge on April 4, 2022 to conduct all proceedings and the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and FED. R. CIV. P. 73.  *See* D.I. 20; D.I. 21.
[2] D.I. 12; D.I. 15.  Briefing is found at D.I. 13, D.I. 16, and D.I. 17.
[3] D.I. 13 at 12-13.
[4] The court refers to the record from the administrative proceeding (D.I. 8) as "Tr."  The record is consecutively paginated and is referred to as "Tr. at ___."
[5] Tr. at 13.

alleged disability beginning March 11, 2011[6] due to the following conditions: acute lumbrosacral radiculopathy lumbar spine, nerve pain, muscle spasms down legs, herniated discs lumbar spine, bulging discs lumbar spine, numbness and tingling down arms and body, migraines, anxiety, panic disorder, and weakness and numbness in legs.[7] Plaintiff's was "last insured" for DIB purposes on December 31, 2016.[8] Her claim was denied initially on February 18, 2016, and upon reconsideration on June 10, 2016.[9] Plaintiff subsequently requested a hearing before an administrative law judge ("ALJ").[10]

The ALJ held a hearing on April 18, 2016, at which time she heard testimony from plaintiff and a vocational expert ("VE").[11] The ALJ issued a decision on May 25, 2018, concluding plaintiff was not under a disability within the meaning of the Act for the relevant period and denying plaintiff's claim for DIB.[12] Plaintiff appealed the ALJ's decision to the Appeals Council, which declined to review the decision.[13] She then brought an action in this court seeking judicial review under 42 U.S.C. § 405(g).[14] Following briefing on the parties' cross-motions for summary judgment, the court remanded for further administrative proceedings to consider plaintiff's migraine headaches in assessing her residual functional capacity ("RFC").[15]

On remand, the ALJ held another administrative hearing on April 13, 2021,

---

[6] *Id.*
[7] *Id.* at 214-15, 233.
[8] *Id.* at 13, 253.
[9] *Id.* at 13, 107, 103-35, 137-42.
[10] *Id.* at 13, 145-46.
[11] *Id.* at 31-85.
[12] *Id.* at 13-23.
[13] *Id.* at 1-6.
[14] See *Overcash v. Saul*, 19-cv-737-RGA (D. Del.).
[15] Tr. at 1463-93.

during which plaintiff and a VE testified.[16]  Plaintiff, through her attorney of record, amended her alleged onset date to May 21, 2014 at this hearing.[17]  The ALJ issued a decision on June 1, 2021 concluding plaintiff was not under a disability within the meaning of the Act from May 21, 2014 through December 31, 2016.[18]  The ALJ found that, while plaintiff could not perform her past work, she could perform a limited range of sedentary work available in the national economy.[19]  Plaintiff initiated the present civil action on August 5, 2021.[20]

## II.   LEGAL STANDARDS

The Commissioner must follow a five-step sequential analysis when determining if an individual is disabled.[21]  The Commissioner must determine whether the applicant: (1) is engaged in substantial gainful activity; (2) has a "severe" medical impairment; (3) suffers from an impairment that meets a listing; (4) has the residual functional capacity to perform past relevant work; and (5) can perform any other work existing in significant numbers in the national economy.[22]

A reviewing court is limited to determining whether the Commissioner's factual findings are supported by "substantial evidence."[23]  "Substantial evidence" is "such

---

[16] *Id.* at 1414-55.  The hearing was held telephonically "due to the extraordinary circumstance presented by the Coronavirus Disease 2019 (COVID-19) Pandemic." *Id.* at 1389.
[17] *Id.* at 1418, 1420-22, 1453, 1603.
[18] *Id.* at 1389-1404.
[19] *Id.* at 1394-95.
[20] D.I. 1.
[21] 20 C.F.R. § 404.1520.
[22] *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citing 20 C.F.R. § 404.1520).
[23] 42 U.S.C. § 405(g).

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[24] In reviewing whether substantial evidence supports the Commissioner's findings, the court may not "re-weigh the evidence or impose [its] own factual determinations."[25] The reviewing court must defer to the ALJ and affirm the Commissioner's decision, even if it would have decided the factual inquiry differently, so long as substantial evidence supports the decision.[26]

The reviewing court must also determine whether the ALJ's decision applied the correct legal standards.[27] The court's review of legal issues is plenary.[28]

## III. DISCUSSION

The ALJ found plaintiff had the following severe impairments: acute incomplete injury to medial plantar nerve (a branch of tibial nerve distal to the ankle and the foot); lumbosacral radiculopathy; peroneal nerve injury above the ankle; degenerative disc disease; tarsal tunnel syndrome; generalized anxiety disorder; posttraumatic stress disorder; adjustment disorder with mixed features, rule out depressive disorder; migraines; degenerative joint disorder; and urinary incontinence.[29] The ALJ found plaintiff's esophageal reflux, gallstones (asymptomatic), and peptic ulcer disease were not "severe" impairments as defined in the regulations.[30] The ALJ posed the following hypothetical question to the VE:

---

[24] *Pierce v. Underwood*, 487 U.S. 552, 564-65 (1988).
[25] *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).
[26] *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).
[27] *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000).
[28] *Id.*
[29] Tr. at 1391-92.
[30] *Id.* at 1392.

> [A]ssume an individual of the claimant's age, education and experience. If such an individual is able to perform *light work*, frequently climb ramps and stairs, but never climb ladders, ropes or scaffolds, occasionally balance, stoop, kneel, crouch, crawl, tolerate occasional exposure to extreme heat, extreme cold, humidity[,] wetness, fumes, odors, dust, gases, poor ventilation, vibrations and hazards such as moving machinery or unprotected heights. If the individual is able to tolerate exposure to light no brighter than a typical office setting level and noise no louder than a typical office setting level and is able to finger, handle and reach frequently, would such an individual be able to perform the claimant's past work?[31]

The VE responded the hypothetical person could perform plaintiff's past work as a mortgage processor, as well as other occupations at the light exertional level, including router, general office helper, and non-post-office mail clerk.[32] The VE also stated the availability of the those jobs would not be impacted by adding "limitations [that] the individual [is] only occasionally able to climb ramps and stairs[,] rather than frequently," and that "the individual required the opportunity to move from a seated position to a standing position or vice versa for up to five minutes throughout ever[y] hour remaining on task. "[33] Next, the ALJ added limitations that:

> the individual were able to remember, understand and carry out simple instructions, could not work at a production pace such as assembly line work, were able to tolerate few changes in a routine work setting, frequently interact with supervisors and co-workers but only occasionally able to work in tandem with others and occasionally interact with the public.[34]

The VE stated those limitations would eliminate the availability of mortgage processor and mail clerk positions, but the general office helper and router positions

---

[31] *Id.* at 1441 (emphasis added).
[32] *Id.* at 1441-42.
[33] *Id.* at 1442-43.
[34] *Id.* at 1443.

5

would remain.[35]  When the ALJ asked if the VE was "aware of any other occupation in the national economy that would be consistent with those limitations in place of the mail clerk position," the VE stated the position of sorter would be available at the light and unskilled level.[36]

Finally, the ALJ asked "if the individual had all the limitations I've listed . . . [and] the individual were at the *sedentary exertional level*.  Are there any occupations in the national economy that such an individual could perform?"[37]  The VE responded such person would able to perform jobs at the sedentary exertional level including: addresser, taper (printed circuit boards), and final assembler.[38]

Plaintiff's counsel then posed a series of questions to the VE regarding the effect of being absent three days per month.[39]  The VE answered that an individual consistently missing three days of work will not maintain employment and, as a rule of thumb, "if there is typically going to be an absence of one day or more a month over time they will not maintain employment."[40]  Plaintiff's counsel then asked if an individual:

> were going to need a sit, stand option and they would have to alternate for five minutes every hour . . . if at five minutes they were not able to remain on task . . . and if they were not productive five minutes every hour and they also were absent at least one day per month would they be able to maintain employment?[41]

The VE responded that "[o]ver time they would not."[42]

---

[35] *Id.*
[36] *Id.* at 1443-44.
[37] *Id.* at 1444 (emphasis added).
[38] *Id.*
[39] *Id.*
[40] *Id.* at 1444-45.
[41] *Id.* at 1445-46.
[42] *Id.* at 1446.

The ALJ's decision stated:

After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant could frequently climb ramps and stairs, but never ladders, ropes, or scaffolds; could occasionally balance, stoop, kneel, crouch, and crawl; could have occasional exposure to extreme cold, extreme heat, wetness, humidity, vibration, fumes, odors, dust, gases, poor ventilation, and hazards; could have exposure to lights no brighter than a typical office setting; could have exposure to noise no louder than a typical office setting; and, could frequently finger, handle, and reach. The claimant required the opportunity to move from a seated position to a standing position or vice versa for up to five minutes throughout every hour while remaining on task. The claimant could remember, understand, and carry out simple instructions, not at a production pace, involving few changes in a routine work setting, and no more than frequent interaction with supervisors and coworkers, occasional tandem work, and no more than occasional interaction with the public.[43]

\* \* \* \* \*

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.[44]

The ALJ relied upon the VE's assessment in her final determination and concluded, considering plaintiff's age, education, work experience, and RFC, she was capable of making a successful adjustment to other work that existed in significant numbers in the national economy, such as addresser, taper (printed circuit boards), and final assembler.[45]

A plaintiff's RFC is her maximum remaining ability to do sustained work activities

---

[43] *Id.* at 1394-95.
[44] *Id.* at 1396.
[45] *Id.* at 1403-04.

in an ordinary work setting on a regular and continuing basis.[46] This contemplates full-time employment and is defined as eight hours a day, five days per week, or another similar schedule.[47] The RFC assessment must include a discussion of the individual's abilities.[48] "[T]he ALJ's finding of [RFC] must be accompanied by a clear and satisfactory explanation of the basis on which it rests."[49]

"The record before the ALJ is the touchstone for determining which limitations should be included in an RFC assessment."[50] "A lack of evidentiary support in the medical record is a legitimate reason for excluding claimed limitations from the RFC."[51] The ALJ must consider all the evidence before her when making her RFC determination and must give some indication of the evidence which she rejects and her reason(s) for discounting such evidence.[52]

"A hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence."[53] An ALJ does not have to include every alleged impairment, but only "a claimant's credibly established limitations."[54] "Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of

---

[46] See Social Security Ruling ("SSR") 96-8p.
[47] Id.
[48] Id.; 20 C.F.R. §§ 404.1545, 416.945; Hartranft, 181 F.3d at 359 n.1.
[49] Fargnoli v. Massanari, 247 F.3d 34, 41 (3d Cir. 2001).
[50] Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 148 (3d Cir. 2007).
[51] Id.
[52] See Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000).
[53] Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987).
[54] Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005).

the existing evidence but cannot reject evidence for no reason or for the wrong reason."[55] The ALJ's decision must be accompanied by a clear and satisfactory explanation of the basis on which it rests for this court properly to decide whether the ALJ's decision is based upon substantial evidence.[56]

If a credibly-established limitation is not included within the hypothetical question, there is a danger that the VE will identify jobs requiring the performance of tasks that would be precluded by the omitted limitation.[57] Remand is required where the hypothetical question is deficient.[58]

Plaintiff argues the ALJ failed to account for all of her migraine-related limitations. She cites evidence of migraines since her alleged onset date associated with her menstrual cycle and stress, their negative effects, and efforts to mitigate those effects. This evidence includes her hearing testimony,[59] medical records showing complaints of severe headaches from November 2011 to November 2016,[60] an April 25, 2015 headache questionnaire,[61] a "Migraine Diary" recording severe headaches from September 22 through December 17, 2016, and a second diary recording episodes from July 2020 and January 2021.[62]

---

[55] *Id.* (internal quotation marks omitted).
[56] *Cotter v. Harris*, 642 F.2d 700, 704-05 (3d Cir. 1981).
[57] *Burns v. Barnhart*, 312 F.3d 113, 122-24 (3d Cir. 2002).
[58] *Rutherford*, 399 F.3d at 554; *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984).
[59] D.I. 13 at 3 (citing Tr. at 141-34).
[60] *Id.* at 4-5 (citing Tr. at 437-38, 466, 468, 472, 539, 829-31, 850, 887, 892, 950, 946, 1004, 1332, 1327).
[61] *Id.* at 5 (citing Tr. at 268-69).
[62] *Id.* at 5-6 (citing Tr. at 298, 1669). The first Migraine Diary also recorded episodes from January 12 to May 6, 2017. Tr. at 298. The ALJ referenced each diary, but stated that "given her date last insured was December 31, 2016, the undersigned

This court remanded the ALJ's May 25, 2018 decision for "further administrative proceedings to address the functional effects of [Plaintiff's] migraine headaches in assessing her residual functional capacity."[63]  Plaintiff maintains the record demonstrates her menstrual-cycle-related migraines force her to lie down in a dark, quiet room for two or more days until they subside.[64]  Although the ALJ found her migraines were severe, plaintiff argues the RFC finding did not properly include her migraine-related limitations.[65]

Specifically, plaintiff maintains VE's testimony establishes that the number of work days she would miss due to migraines precludes full-time employment, and thus she is disabled pursuant to the Agency's definition.[66]  She also argues that despite purportedly accommodating her headaches in the RFC's environmental limitations, the ALJ did not address this court's prior remand statement that "the ALJ fails to explain the nexus, if any, between environmental limitations and migraine headaches associated with [Plaintiff's] menstrual cycles."[67]  Because the RFC does not account for either two or more absences per month or off-task behavior due to migraines, and because the ALJ did not explain why she omitted such limitations, plaintiffs urges remand for further administrative hearings.[68]

Defendant notes the ALJ was not required to accept plaintiff's unsupported

---

must first find that her impairments resulted in disability prior to that date." *Id.* at 1398.
[63] *Id.* at 1495.
[64] D.I. 13 at 7.
[65] *Id.* at 7-8.
[66] *Id.* at 8-9
[67] *Id.* at 11-12 (quoting Tr. at 1495).
[68] *Id.* at 10-12.

allegations concerning her migraines.[69] Here, the ALJ found plaintiff's statements as to the debilitating effects of her migraines was not supported by the record.[70] Defendant contends the ALJ's extensive discussion of the record to explain her RFC assessment, including plaintiff's neurological examinations and the extent and nature of her migraine treatment, enables a meaningful judicial review.[71]

As noted above, the court reviews the final decision of the Commissioner only to determine whether it applied the correct legal standards and is supported by "substantial evidence."[72] The Supreme Court recently emphasized, "the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is 'more than a mere scintilla.'"[73] "It means–and means only–'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[74] This deferential standard of review does not permit the court to "weigh the evidence or substitute its conclusions for those of the fact-finder."[75] If substantial evidence supports the decision, it must be affirmed even if the court would have made a contrary determination.[76] Applying these standards, the court determines the ALJ applied the correct legal standards, and that substantial evidence supports her RFC and conclusion that plaintiff was not disabled under the requirements of the Act during the relevant period.

---

[69] D.I. 16 at 1.
[70] *Id.* at 1-2.
[71] *Id.*
[72] 42 U.S.C. § 405(g); *Pierce v. Underwood*, 487 U.S. 552, 564-65 (1988).
[73] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).
[74] *Id.* (citations omitted).
[75] *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).
[76] *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

The burden of proving disability rests with the claimant.[77] Disability is defined by the Act as the "inability to do any substantial gainful activity by reason of a medically determinable physical or mental impairment that is expected to result in death" or last at least twelve continuous months.[78] The ALJ appropriately applied the sequential evaluation process in analyzing plaintiff's claim. After finding certain of plaintiff's impairments severe, she concluded those impairments, including migraines, alone and in combination did not meet one of the Commissioner's listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.[79]

The ALJ next determined plaintiff had the RFC to perform a range of sedentary work with the limitations specified in the hypothetical question posed to the VE.[80] The ALJ relied on the VE's testimony and found plaintiff could perform work that existed in significant numbers in the national economy.[81] Consequently, the ALJ found plaintiff was not disabled from May 21, 2014 through December 31, 2016.[82]

The ALJ arrived at plaintiff's RFC after she "careful[ly] consider[ed] the entire

---

[77] 20 C.F.R. § 404.1512.

[78] 42 U.S.C. § 423(d)(l)(A). An impairment must be accompanied by functional limitations severe enough to preclude a claimant from working. *Jones v. Sullivan*, 954 F.2d 125, 128-29 (3d Cir. 1991).

[79] Tr. at 1391-94. The ALJ "considered the claimant's headaches under Listing 11.02B&D . . . [but determined] from the alleged onset date through the date last insured there is *limited objective evidence of migraines* or seizure-like activity occurring at least once every two weeks for at least three consecutive months despite adherence to prescribed treatment, and a marked limitation in one of the following: (1) physical functioning; or (2) understanding, remembering, or applying information; or (3) interacting with others; or (4) concentrating, persisting, or maintaining pace; or (5) adapting or managing oneself." *Id.* at 1393 (emphasis added).

[80] *Id.* at 1394-1402.

[81] *Id.* at 1402-04.

[82] *Id.* at 1404.

record," including plaintiff's migraine-related evidence recounting her subjective complaints, neurological treatment records, and treatment regimen.[83] The ALJ's failure to cite specific evidence, however, does not establish that the ALJ failed to consider it.[84] An ALJ "need not 'make reference to every relevant treatment note in a case where[, as here,] the claimant . . . has voluminous medical records.'"[85] Further, a "written evaluation of every piece of evidence is not required," so long as the ALJ, at some minimum level, articulates her analysis of particular evidence.[86] Moreover, in formulating the RFC finding, the ALJ may discount a claimant's subjective complaints if they are inconsistent with the evidence of record.[87] Here, the ALJ found plaintiff's "statements about the intensity, persistence, and limiting effects of . . . her symptoms, [including migraines,] . . . are *inconsistent* with the totality of the evidence of record during the relevant period."[88]

The court finds the ALJ's seven page, single spaced, narrative discussion of the relevant evidence allows meaningful judicial review of her RFC determination.[89] Included therein, the ALJ discussed plaintiff's subjective complaints related to her

---

[83] *Id.* at 1394-1402.
[84] *See Martin v. Comm'r of Soc. Sec.*, 547 F. App'x 153, 160 (3d Cir. 2013).
[85] *See Robinson v. Colvin*, 137 F. Supp. 3d 630, 645 (D. Del. 2015) (quoting *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001)).
[86] *Phillips v. Barnhart*, 91 F. App'x 775, 280 n.7 (3d Cir. 2004).
[87] *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999).
[88] Tr. at 1396 (emphasis added).
[89] *Id.* at 1394-1402. *See, e.g.*, *Martinez v. Comm'r Soc. Sec.*, 663 F. App'x 191, 194 (3d Cir. 2016) (finding the ALJ's narrative discussion of the medical evidence that contradicted the plaintiff's subjective complaints was adequate to explain why those complaints were not incorporated into the RFC); *Tenorio v. Berryhill*, Civ. No. 16-3760, 2017 WL 4548057, at *4 (E.D. Pa. Oct. 11, 2017) (finding the ALJ's thorough discussion of the medical evidence, opinions, and testimony before concluding the plaintiff could perform light work sufficiently explained his RFC).

migraine headaches and the medical evidence demonstrating why no greater RFC restrictions were warranted.[90]

Specifically, the ALJ noted evidence that plaintiff suffered one to two severe headache days a month accompanied with nausea and vomiting that typically occurred around her menstrual cycle.[91] The ALJ also referenced plaintiff's testimony that she was unable to function when she had a migraine until she took medication and lays down.[92] After "careful consideration of the evidence," the ALJ found that while "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms[,]" plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence."[93] The ALJ specifically stated plaintiff's "statements about the intensity, persistence, and limiting effects of . . . her symptoms[, including migraines,] . . . [were] *inconsistent* with the totality of the evidence of record during the relevant period."[94]

The ALJ referenced plaintiff's numerous medical appointments and prescribed migraine medication.[95] Plaintiff's treating neurologists documented normal cranial nerves and mental status examinations, including normal orientation, alertness, memory, attention, language, and fund of knowledge.[96] She was prescribed Tylenol

---

[90] Tr. at 1395-98.
[91] *Id.* at 1395 (citing plaintiff's hearing testimony and a Disability Report dated April 10, 2015), 1398 (citing first Migraine Diary).
[92] *Id.* at 1395.
[93] *Id.* at 1396.
[94] *Id.* (emphasis added).
[95] *Id.* at 1396-98.
[96] *Id.* at 887, 948, 952, 1006, 1207, 1330, 1335, 1396-98.

with codeine and Amerge (a Triptan).[97] With her prescribed treatment regimen, plaintiff generally described her migraine symptoms as stable.[98]

Based on the objective medical evidence, the ALJ reasonably concluded the extent and nature of plaintiff's treatment regimen did not align with her claim of disabling limitations.[99] For example, plaintiff was prescribed medication to specifically target migraines, but she generally only used Tylenol with codeine.[100] She also declined further interventions or evaluation for her migraines.[101] Because the objective medical evidence supports the ALJ's conclusion that plaintiff's subjective complaints were inconsistent with that evidence, she was not required to include those purported

---

[97] *Id.* at 1397, 852, 887, 949, 953, 1007, 1208, 1330, 1336. According to defendant, "Triptans are a kind [of] medication used to treat migraine headaches by alleviating headache pain, nausea, and vomiting and work best if taken as soon as the headaches starts. WebMD, Triptans for Migraine Treatment, available at https://www.webmd.com/migraines-headaches/triptansmigraines (last visited Jan. 24, 2022). Triptans can be taken a few days prior to the start of a menstrual cycle to prevent menstrual related migraines. WebMD, Medicines that Can Prevent Migraine Headaches, available at https://www.webmd.com/migraines-headaches/preventivemigraine-medicine (last visited Jan. 24, 2022")). D.I. 16 at 3 n.2.
[98] Tr. at 850, 887, 953, 1007, 1203, 1387-98.
[99] *See* SSR 16-3p, 2017 WL 5180304, at *9 (explaining that, "if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms," an ALJ may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record).
[100] Tr. at 850 ("didn't take triptan as rx'ed"), 946 ("[s]he only wants to take Tylenol"), 949 ("she doesn't want to change medications"), 1004 ("usually able to control headaches with Tylenol, if needed"), 1007 ("headaches have been stable and she will continue mainly with the Tylenol", 1332 ("[t]akes Tylenol as needed"), 1338 ("[h]as not had to take Amerge").
[101] *Id.* at 852 ("MIGRAINE WITHOUT AURA . . . stable. decl further eval / intervention").

limitations in her hypothetical question to the VE, or in the RFC.[102]

Therefore, the VE's testimony that there were a significant number of jobs in the national economy that plaintiff could perform[103] was made in response to a hypothetical question that conveyed plaintiff's medically supported functional limitations. Consequently, the court finds the ALJ's reliance on that testimony to determine plaintiff's RFC, and her determination that plaintiff was not disabled during the relevant period, is supported by substantial evidence.

## IV. CONCLUSION

For the reasons discussed above, plaintiff's motion for summary judgment (D.I. 12) is DENIED, and defendant's cross-motion for summary judgment (D.I. 15) is GRANTED.

An order consistent with the findings in this Memorandum shall follow.

October 20, 2022              /s/ Mary Pat Thynge
                              CHIEF U.S. MAGISTRATE JUDGE

---

[102] *See, e.g., Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) ("[T]he hypotheticals posed must 'accurately portray' the claimant's impairments and that the expert must be given an opportunity to evaluate those impairments 'as contained in the record.' . . . Fairly understood, such references to all impairments encompass *only those that are medically established*." (emphasis added) (citations omitted)); *see also Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987) ("A hypothetical question must reflect all of a claimant's impairments *that are supported by the record*[.]") (emphasis added) (citations omitted).
[103] Tr. at 1441-44.